## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| **THOMAS WAYNE WALLER** | **CIVIL ACTION NO. 19-1177** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN JIM TUTEN, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Thomas Wayne Waller, a former prisoner at Lincoln Parish Detention Center ("LPDC") proceeding pro se and in forma pauperis, filed the instant proceeding on approximately September 6, 2019, under 42 U.S.C. § 1983. He names the following defendants: Sheriff Mike Stone, Warden Jim Tuten, Secretary James LeBlanc, John Doe, and the Lincoln Parish Clerk of Court.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff claims that LPDC "does not offer an inmate adequate access to courts . . . ." [doc. # 1, p. 3]. The facility does not, according to Plaintiff, maintain a law library or a law library officer trained in the law to assist inmates. *Id.* Inmates can access a kiosk, but only one inmate can use it at a time, "there are frequent problems with badge numbers [] that you have to use to access the kiosk, and not all inmates are educated enough to use a computer." *Id.* Plaintiff has a "hernia mesh complaint from the Tex. Dept. of Criminal Justice . . . from on or about 2008 or 2007[,]" which he is unable to "properly prosecute" because, while he can access case law and the Federal Rules of Civil Procedure through the kiosk, the kiosk lacks legal addresses, formats

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

for pre-trial motions, rosters of attorneys, and an inmate legal handbook. [doc. # 11, p. 2]. He also attempted to file a civil action in state court concerning his incarceration beyond his release date, but he lacked "books or forms." [doc. # 17, p. 8].

Plaintiff claims that "the meals are not adequate and is [sic] not the same servings other state inmates in state facilities receive." [doc. # 1, p. 3].

Plaintiff claims that inmates are forced to sleep on the floor in unsanitary and overcrowded conditions. *Id.* He slept on a foam mat on the floor for four or five days, which aggravated his chronic lower back pain and his leg/ankle injury. [doc. #s 1, p. 3; 17, pp. 3, 6; 17-1, pp. 4, 8].

Plaintiff claims that he lacks adequate access to the recreation yard. [doc. # 6, p. 1]. He claims that "out of 90 days, [he] had a total of 15 days of outside recreation . . . ." [doc. # 17, p. 5]. Exercise helps him with his post-traumatic stress disorder, chronic back problems, and chronic arthritis. *Id.*

Plaintiff has a "chronic back problem" and claims that "medical refuses to issue pain meds, only certain meds. [sic]." [doc. # 1, p. 3]. In a later pleading, he names a physician, John Doe ("Dr. John Doe"), as the responsible defendant, claiming that Dr. John Doe informed him that LPDC does not provide pain medication. [doc. # 17, pp. 8-9]. Plaintiff allegedly lacked adequate pain medication for three months. *Id.* at 9.

Plaintiff claims, in his second amended pleading, that "fire safety and sanitation standards are in violation of state law and the constitution." [doc. # 11, p. 1].

Plaintiff claims, in his third amended pleading, that defendants failed to credit him for four days of incarceration, which caused him to remain incarcerated beyond his release date. [doc. # 17, pp. 2, 4]. He maintains that he was in custody at Ouachita Correctional Center

("OCC") for four days and that, when he arrived at LPDC, a booking officer erroneously documented his arrest date as the date he arrived at LPDC rather than the date he was actually arrested and transported to OCC. *Id.*

Also in his third amended pleading, Plaintiff lists several complaints concerning grievances at LPDC:

° "There is no grievance box to keep complaints confidential; grievances are picked up from the dorms (cell blocks) with the outgoing mail, and any officer can have access to your grievance."

° "Officers or any staff can answer your grievance even when it's against them."

° "There is no central grievance officer . . . ."

° Secretary James LeBlanc "should be listed as Step 2 in the grievance process";

° Secretary James LeBlanc should maintain an "in-house mail box that does not require a paid postage at the inmate's expense," or he should maintain a liaison or representative at LPDC.

*Id.* at 3-5. He claims that, because the grievance procedure is inadequate, he was unable to exhaust his administrative remedies. *Id.* at 4.

Plaintiff claims that he lacked access to a toilet in his dormitory because of overcrowding. *Id.* at 6. He suggests that he had to enter others' cells to use their toilets, but he "had altercations trying to access" the cells. *Id.* He also alleges that attempting to use others' toilets was degrading, inhumane, and demeaning, and that the process caused his blood pressure to rise "sky high." *Id.*

Plaintiff claims that defendants violated his right to privacy by installing surveillance cameras in the "toilet and shower area," which are monitored by female and male employees. [doc. # 17, p. 10]. He alleges that his bowel movements are now irregular because, while being surveilled, he "held bladder and bowel movements . . . ." *Id.*

Plaintiff claims that defendants transferred him to OCC in retaliation for his request to use law library books.  [doc. # 18, p. 2].

Plaintiff asks the Court to order defendants to implement an adequate law library system, to prevent defendants from transferring him or using force against him in retaliation, and to stop punishing inmates "by meals, overcrowding, refusing to give meds, [and] sleeping on floor . . . [sic]."  [doc. #s 1, p. 4; 11, p. 2].  Plaintiff also asks the Court to file criminal charges against Defendants, and he seeks punitive damages and $1,200,000.00 in compensation for his pain, suffering, and mental anguish.  *Id.*

## Law and Analysis

### 1. Preliminary Screening

Because Plaintiff is proceeding in forma pauperis*,* his Complaint is subject to screening under § 1915(e)(2).  Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is

4

facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Duplicative Claim

Plaintiff claims that defendants failed to credit him for four days of incarceration, which caused him to remain incarcerated beyond his release date. [doc. # 17, pp. 2, 4]. He maintains that he was in custody at OCC for four days and that, when he arrived at LPDC, the booking officer erroneously documented his arrest date as the date he arrived at LPDC rather than the date he was actually arrested. *Id.*

Plaintiff is duplicating a claim he raised in a prior proceeding, *Thomas Wayne Waller v. Sheriff Jay Russell, et al.*, 3:19-cv-1115 (W.D. La. 2019). There, he claimed that the State failed to credit him for four days of incarceration, which caused him to remain incarcerated beyond his release date. *Id.* at doc. 24, p. 8.

As the instant claim is duplicative, the Court should dismiss it as frivolous and

malicious.[2, 3]  See *Comeaux v. Cockrell*, 72 F. App'x 54, 55 (5th Cir. 2003) (approving the dismissal of only some claims—rather than an entire complaint—as duplicative and therefore malicious).

## 3. Access to Court

Plaintiff claims that LPDC does not maintain a law library or a law library officer trained in the law to assist inmates.  [doc. # 1, p. 3].  Inmates can access a kiosk, but "only one inmate can use it at a time."  *Id.*  Plaintiff has a "hernia mesh complaint from the Tex. Dept. of Criminal Justice . . . from on or about 2008 or 2007[,]" which he is unable to "properly prosecute" because, while he can access case law and the Federal Rules of Civil Procedure through the kiosk, the kiosk lacks legal addresses, formats for pre-trial motions, rosters of attorneys, and an inmate legal handbook.  [doc. # 11, p. 2].  He also attempted to file a civil action in state court concerning his incarceration beyond his release date, but he lacked "books or forms."  [doc. # 17, p. 8].

To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial.

---

[2]  "IFP complaints may be dismissed as frivolous pursuant to § 1915(d) when they seek to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the IFP plaintiff."  *Wilson v. Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989).  Likewise, "it is malicious for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff."  *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (internal quotation marks omitted); see *Lewis v. Sec'y of Pub. Safety & Corr.*, 508 F. App'x 341, 344 (5th Cir. 2013); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[A]n IFP complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under . . . section 1915(d).").

[3] That Plaintiff names additional defendants here does not change the result.  See *Lewis*, 508 Fed. App'x at n.2; *Bailey*, 846 F.2d at 1021 (affirming dismissal where the "complaint repeats the same factual allegations that [the plaintiff] asserted in his earlier case, although he successively sued different defendants.").

*Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a claim of denial of access to the courts, a plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it."[4]  *Christopher*, 536 U.S. at 417-18.

The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353.  Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

"Denial-of-access claims take one of two forms: forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time,' and backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.'" *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher*, 536 U.S. at 413-14).

 "To maintain a backward-looking claim, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought." *United States v. McRae*,

---

[4] "The underlying claim must be described well enough to apply the frivolity test and to show that its 'arguable' nature . . . is more than hope." *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017) (citing *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)).

702 F.3d 806, 830-31 (5th Cir. 2012); see *Christopher*, 536 U.S. at 413-14 (("These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable.").

With respect to the inability to access a library or a claim that a library was deficient, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* The "inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim." *Sanchez*, 689 F. App'x at 799.

Here, Plaintiff mentions a "hernia mesh complaint," but he does not claim that defendants' actions (or inaction) prevented him from filing, or caused him to lose, the claim(s). He does not allege, for instance, that the inadequate law library kiosk or the absence of a trained law library officer, prevented him from filing, or caused him to lose, the claim. Similarly, he does not explain how access to the law library would have aided him, "how he would have proceeded with access to a law library," what specific cases or law he would have cited if he had

access to the law library, "or how [his] claims would have been meritorious."  See *Hopkins v. Ogg*, 2019 WL 3761360, at *3 (5th Cir. Aug. 8, 2019).

Moreover, Plaintiff's laconically-described "hernia mesh complaint" does not reflect a claim that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action.  Even assuming the claim concerned basic constitutional rights, Plaintiff does not sufficiently identify a non-frivolous, arguable claim that he could not raise, that he raised and lost, or for which he could not obtain a remedy.  See *Sanchez*, 689 F. App'x at 799 ("His assertions that he has been hindered in presenting claims challenging his criminal conviction and prison disciplinary cases are conclusory. He fails to describe the claims with the particularity needed to evaluate whether they were nonfrivolous and does not explain with specificity how the absence of legal materials and assistance in Spanish actually hindered those claims.").

Plaintiff claims that he attempted to file a civil action in state court concerning his four days of incarceration beyond his release date, but he lacked "books or forms." [doc. # 17, p. 8]. However, while he faults the lack of "books" and "forms," he does not explain what rule, requirement, or law he could not locate in "books" or "forms" that caused—or would cause—a state court to reject his filing.   Plaintiff does not claim, for instance, that the state court required him to file on a form that he could not obtain due to the alleged deficiencies at LPDC.

Finally, Plaintiff alleges that the Lincoln Parish Clerk of Court rejected his filing—concerning his incarceration beyond his release date—because he could not afford to pay the filing fee. [See doc. #s 18, p. 3; 18-1, p. 1; 22, p. 1].  He claims that the Clerk of Court did not "offer an alternative for the filing fee . . . or the alternative solution of in forma pauperis." [doc. # 22, p. 2].

However, Plaintiff attempted to file his state-court petition on October 28, 2019, *before* the date he alleges he should have been released. Seeking only compensatory relief and punitive damages, he alleged in the petition that he "*would be* illegally confined" on October 30, 2019, if he was not released. [doc. #s 22, p. 1; 22-1, pp. 3-5 (emphasis supplied)]. Thus, when he attempted to file his petition, he had not suffered any harm or injury. His claim was based on a contingency: that he may or may not be released from incarceration when the correct release date arrived. Plainly stated, he filed his state-court petition too early.

Under LA. CODE CIV. PROC. art. 681, "[A]n action can be brought only by a person having a real and actual interest which he asserts." Louisiana courts do not "decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies." *Cat's Meow, Inc. v. City of New Orleans Through Dep't of Fin.*, 98-0601, p. 8 (La. 10/20/98), 720 So. 2d 1186, 1193. "In order to avoid deciding abstract, hypothetical or moot questions, courts require cases submitted for adjudication to be justiciable, ripe for decision, and not brought prematurely." *Id.*

A justiciable controversy is "an existing actual and substantial dispute . . . [and] must be . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Soileau v. Wal-Mart Stores, Inc.*, 2019-0040 (La. 6/26/19) (internal quotation marks and quoted sources omitted).

Here, because Plaintiff was not incarcerated beyond his release date when he filed his state-court petition, he had yet to suffer any injury. Because he had yet to suffer injury, he did not present a justiciable controversy. See *McKissick v. LeBlanc*, 2012-1557 (La. App. 1 Cir. 6/7/13) (finding, where a detainee filed a petition alleging that "he had a reasonable expectation

that [sentencing] computation errors may reoccur[,]" that "such speculation [was] insufficient to create a justiciable controversy" and that the district court correctly sustained the Department of Public Safety and Corrections' exception).[5]  Because he did not present a justiciable controversy, his underlying claim was frivolous.[6]  Consequently, he does not state a plausible access-to-court claim.

The Court should dismiss these claims.

**4. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care."  *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).  To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's

---

[5] See also *Bradix v. Advance Stores Co., Inc.*, 2017-0166 (La. App. 4 Cir. 8/16/17), 226 So. 3d 523, 529 ("As Mr. Bradix failed to allege a particular injury, we find that his injury is too abstract such that our opinion on the matter would be advisory. As such, Mr. Bradix's theoretical injuries are based upon the contingency of a third party using his information in the future. We find he lacks a justiciable controversy and standing."); *Soileau v. Wal-Mart Stores, Inc.*, 2019-0040 (La. 6/26/19) ("[Her arguments focus on abstract harm she might suffer in the future if Wal-Mart is permitted to restrict her to its own pharmacy. The injury resulting from this purported conflict of interest is not based on any actual facts or occurrences; rather, she asks the court to assume that she will suffer harm if certain hypothetical facts occur. We decline to render an advisory opinion based on facts which may or may not occur at some unspecified time in the future.").

[6] A prisoner must describe the predicate claim with sufficient detail to demonstrate that it is "arguable" and involves "more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

necessities."[7]  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).  To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference.  *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets."  *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[8]  However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  *Id.* at 305.

### A. Calorically-Deficient Meals

Plaintiff claims that "the meals are not adequate and is [sic] not the same servings other state inmates in state facilities receive."  [doc. # 1, p. 3].

---

[7] The deprivation alleged must be, objectively, sufficiently serious.  *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[8] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement."  *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

That the meals were inadequate simply invites the question, why were the meals inadequate?  Plaintiff did not heed the undersigned's instruction to elaborate on this condition of confinement.  Accordingly, the Court should dismiss this conclusory claim.

### B. Sleeping on the Floor

Plaintiff claims that inmates are forced to sleep on the floor in unsanitary and overcrowded conditions.  [doc. # 1, p. 3].  He slept on a foam mat on the floor for four or five days, which aggravated his chronic lower back pain and his leg/ankle injury.  [doc. #s 1, p. 3; 17, pp. 3, 6; 17-1, pp. 4, 8].

Plaintiff, however, does not allege that any defendant knew of an excessive risk to his health or safety when he was assigned to a floor-level foam mat on an unsanitary floor.  In addition, Plaintiff was not deprived of a basic human need or a minimal civilized measure of life's necessities.  See *Novak v. Beto*, 453 F.2d 661, 665-66 (5th Cir. 1971) (finding no constitutional violation where inmates in solitary confinement were given gowns and blankets, but were not provided mattresses or pillows, even during nighttime hours, for up to 15 days).  Plaintiff does not allege, for example, that sleeping on the foam mat on an unsanitary floor for four to five days caused him to endure an extreme deprivation of sleep.  Plaintiff also does not allege that the unsanitary floor affected his sleep or exacerbated his pain.

Plaintiff's claim is, at bottom, that his foam mat was not elevated or comfortable, but the Constitution does not require elevated beds or commodious conditions.  See *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998); *Gaines v. McDonald*, 577 F. App'x 335, 336 (5th Cir. 2014) ("There is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (reasoning that the plaintiff "has cited no case holding that the Constitution requires elevated beds for prisoners, and we know of no source

for such a right."). While sleeping on the foam mat caused Plaintiff additional back, leg, and ankle pain, this four to five-day period of additional pain does not plausibly reflect a sufficiently serious deprivation of a life necessity.

### C. Unsanitary Conditions

As above, Plaintiff claims that the floor under the mat on which he slept was unsanitary. [doc. # 1, p. 3]. He alleges in a later pleading that the "sanitation . . . is inadequate" and that "sanitation standards are in violation of state law and the constitution." [doc. # 11, p. 1]. He alleges in yet another pleading that "the pod is unkempt and unsanitary . . . ." [doc. # 17, p. 6].

Plaintiff, however, never describes the unsanitary conditions and, more important, fails to explain how the unsanitary conditions amounted to an extreme deprivation of hygiene or sanitation. This claim is, ultimately, conclusory; the Court should dismiss it.

### D. Exercise and Recreation

Plaintiff claims that he lacks adequate access to the recreation yard. [doc. # 6, p. 1]. He alleges that "recreation is inadequate . . . ." [doc. # 11, p. 1]. He claims that "out of 90 days, [he] had a total of 15 days of outside recreation . . . ." [doc. # 17, p. 5]. Exercise helps him with his post-traumatic stress disorder, chronic back problems, and chronic arthritis. *Id.*

While recreation and exercise are certainly identifiable life needs,[9] Plaintiff does not state a plausible claim. While he was allegedly deprived of some *outdoor* exercise, he does not describe an extreme deprivation of exercise. He was able to exercise outside fifteen out of ninety days (i.e. approximately once every six days). Moreover, while he alleges that it was crowded inside, he does not allege that he could not engage in the exercise or recreation he required while

---

[9] See *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), amended in part, vacated in part, 688 F.2d 266 (5th Cir. 1982) (favorably citing other courts' opinions that "inmates need regular exercise to maintain reasonably good physical and psychological health.").

inside.[10]  He does not explain why the space he had to exercise in was inadequate to his needs. See *Ruiz*, 679 F.2d at 1152 ("Of particular importance in determining an inmate's need for regular exercise are the size of his cell, the amount of time the inmate spends locked in his cell each day, and the overall duration of his confinement.") (internal footnotes omitted).  Plaintiff does not claim that his inability to enjoy time outside deprived him of a minimal civilized measure of life's necessities or otherwise amounted to an extreme deprivation.

In addition, Plaintiff states that, without the exercise he seeks, he is unable to walk "upright," he is unable to relieve tremendous stress, and he is unable to calm himself.  [doc. # 17, p. 5].  These ailments do not plausibly reveal that Plaintiff was exposed to a substantial risk of serious harm.  See *Hernandez*, 522 F.3d at 560-61 (finding, where the plaintiff alleged a denial of outdoor and out-of-cell exercise for thirteen months, that even if there was a "fact issue as to whether [the plaintiff] suffered from muscle atrophy, stiffness, loss of range of motion, and depression, there [was] nonetheless no indication these conditions posed a substantial risk of serious harm.").  The Court should dismiss this claim.

### E. Access to a Toilet

In his third amended pleading, Plaintiff claims, for the first time, that he lacked access to a toilet in his dormitory because of overcrowding.  [doc. # 17, p. 6].   He alleges that he had to enter others' cells to use their toilets, but he "had altercations trying to access" other inmates'

---

[10] See *Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (finding a similar claim "meritless because it [was] premised on the erroneous assumption that [the plaintiff] had an absolute right to exercise or recreation."); *Carter v. Hubert*, 452 F. App'x 477, 478-79 (5th Cir. 2011) ("In regard to his unconstitutional conditions of confinement claims that his placement in a restrictive cell program for seven days at a time, for a total of 26 days, resulted in a lack of exercise, deprivation of meals, and flu-like symptoms due to a severely cold cell, Carter has not demonstrated that prison officials violated his Eighth Amendment rights."); *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), on reh'g, 636 F.2d 1364 (5th Cir. 1981) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise.").

cells.  *Id.*  He also alleges that attempting to use others' toilets was degrading, inhumane, and demeaning, and that the process caused his blood pressure to rise "sky high."  *Id.*

Initially, the undersigned highlights that Plaintiff does not allege that he was deprived of adequate, timely access to a toilet.  Rather, Plaintiff appears to allege that, by endeavoring to use others' toilets, he was deprived of dignity and health.  As noted, his blood pressure rose, and he felt degraded, inhuman, and demeaned.  He endured "altercations," but he does not explain whether the psychological harm he experienced was from endeavoring to use others' toilets, from simply using another's toilet, or from not having his own toilet.

While the undersigned is sympathetic to Plaintiff's experience, Plaintiff does not plausibly describe an extreme deprivation of a life necessity.  The Eighth Amendment does embody "broad and idealistic concepts of dignity, civilized standards, humanity and decency, against which conditions of confinement must be judged."  *Rhodes v. Chapman*, 452 U.S. 337, 372 (1981) (internal quotation marks and quoted sources omitted).  However, "the Constitution does not mandate comfortable prisons, and prisons . . . cannot be free of discomfort."  *Id.* at 349.  Plaintiff does not describe "wanton infliction of pain."  See *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (observing that the Eighth Amendment prohibits the wanton infliction of pain).

Moreover, Plaintiff does not plausibly allege that he was exposed to a substantial risk of serious harm, considering that he endured these conditions for only five days.  [doc. # 17, p. 6].  The Court should, accordingly, dismiss this claim.

### F. Privacy

Plaintiff claims that defendants violated his right to privacy by installing surveillance cameras in the "toilet and shower area," which are monitored by female and male employees. [doc. # 17, p. 10].  He alleges that his bowel movements are now irregular because, while being

surveilled, he "held bladder and bowel movements . . . ." *Id.* He also alleges that the experience was degrading, humiliating, and stressful. *Id.*

To the extent Plaintiff alleges that these conditions violated the Eighth Amendment, he does not allege a plausible claim.[11] These conditions alleged do not reflect an extreme deprivation of any minimal civilized measure of life's necessities.[12]

With respect to the lack of privacy, the Eighth Amendment does not afford protection against conditions of confinement which cause mere discomfort or inconvenience. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Moreover, "Loss of freedom of choice and privacy are inherent incidents of confinement . . . ." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).[13] The Court should dismiss this ostensible Eighth Amendment claim.

With respect to the effect of the surveillance on Plaintiff's health—his ability to urinate and defecate freely—he does not describe an extreme deprivation because he does not specify how often, or how long he "held bladder and bowel movements." Moreover, that his bowel movements could become irregular does not reflect a substantial risk of serious harm. Further,

---

[11] As discussed below, the Fourth and Fourteenth Amendments are more pertinent to these allegations.

[12] See *Ordaz v. Martin*, 5 F.3d 529 (5th Cir. 1993) (determining, where the plaintiff alleged that female prison guards viewed him masturbating, that the condition did not "rise to the level of cruel and unusual punishment."); *Oliver v. Scott*, 276 F.3d 736, 743 (5th Cir. 2002) (noting that the plaintiff was wise to forego arguing that cross-sex searches and monitoring violate the Eighth Amendment given the Fifth Circuit's refusal to extend the Eight Amendment to strip searches).

[13] See also *Hudson v. Palmer*, 468 U.S. 517, 528 (1984) ("We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.").

he does not allege that defendants knew that he was unable to urinate and defecate because of the surveillance.  The Court should dismiss these claims.

### G. Fire Safety

Plaintiff claims, in his second amended pleading, that "fire safety . . . standards are in violation of state law and the constitution."  [doc. # 11, p. 1].  He does not elaborate.

Plaintiff does not allege that he suffered harm or that he will imminently suffer harm. Because he only alleges conjectural risks, he lacks standing to pursue these claims.  See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (recognizing that, to have standing, a plaintiff must have suffered an injury in fact that is "actual or imminent, not conjectural or hypothetical[.]") (citations and internal quotation marks omitted).[14]

Even assuming Plaintiff did allege that he suffered harm or will imminently suffer harm, he does not plausibly allege that he was exposed to a substantial risk of serious harm.  Moreover, he does not plausibly allege that he was, objectively, deprived of safety.  His terse allegation does not demonstrate, for instance, that the facility is particularly susceptible to fire or that, even if it was, it lacked a sufficient evacuation plan, enough escape exits, or enough employees to ensure that every prisoner escapes a fire safely.  See *Johnson v. Texas Bd. of Criminal Justice*, 281 F. App'x 319, 322 (5th Cir. 2008) ("As Johnson did not allege that anyone had been injured by any type of fire or that Wynne was built from flammable materials or was particularly susceptible to fires, his allegations do not state a viable claim.").[15]  Moreover, the alleged

---

[14] See also *Thompson v. Scott*, 86 F. App'x 17, 18 (5th Cir. 2004) (holding that, because an inmate alleged no injury from a policy, he had no standing to raise a claim); *Colgrove v. Collins*, 62 F.3d 391 (5th Cir. 1995) (holding that a "speculative claim of injury is insufficient to satisfy Article III's requirements for standing.").

[15] See also  *Billizone v. Jefferson Par. Corr. Ctr.*,  2015 WL 1897683, at *4 (E.D. La. Apr. 27, 2015) (denying a claim that a correctional center was "not up to code[,]" reasoning that while the

deficiency bears little, if any, relation to the other conditions of confinement of which Plaintiff complains. While he refers to unidentified fire-safety standards, these standards would only be "instructive in certain cases," would only establish recommended goals, and would "not establish the constitutional minima . . . ." *Bell v. Wolfish*, 441 U.S. 520, n. 27 (1979).[16] The Court should dismiss this claim.

## 5. Lack of Privacy

To reiterate, Plaintiff claims that defendants violated his right to privacy by installing surveillance cameras in the "toilet and shower area," which are monitored by female and male employees. [doc. # 17, p. 10].

"Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Prisoners also retain a "minimal, at best," right to bodily privacy under the Fourteenth Amendment. *Id.* at 745. "But, even if a prison regulation 'impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Garrett v. Thaler*, 560 F. App'x 375, 380 (5th Cir. 2014) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

---

"situation" is "far from ideal, it is not so patently egregious or clearly dangerous that the prison officials could be found to be deliberately indifferent if they allowed it to continue."); *Patin v. LeBlanc*, 2012 WL 3109402, at *16–17 (E.D. La. May 18, 2012), report and recommendation adopted, 2012 WL 3109398 (E.D. La. July 31, 2012) (finding that the plaintiff "has not alleged a specific risk of harm or that any actual harm has occurred as a result of the fire and electrical system at the prison.").

[16] See *Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, however, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. Nor is it bound by the standards set by the safety codes of private organizations. Standards suggested by experts are merely advisory. A federal court required to gauge the conduct of state officials must use minimum constitutional standards as the measure." (citations omitted)).

Affirming the dismissal of a plaintiff's claim that "video recording cameras in the restrooms, showers, and dressing areas of the prison—as well as female officers' viewing of male inmates both in those areas and on the cameras—violate[d] [the plaintiff's] expectation of minimal privacy under the Fourth Amendment[,]" the Fifth Circuit explained:

> [W]e rejected in *Oliver* a similar challenge on the grounds that "constant surveillance, even cross-sex surveillance, of prisoners is constitutional because it is reasonably related to the penological interest of maintaining security." *Oliver*, 276 F.3d at 745-46. The court found that, as here, comprehensive surveillance by all guards increases the overall security of the prison, minimizing inmate-on-inmate violence and sexual assaults. *Id.* at 746. Moreover, requiring only male guards to supervise inmates or doing away with security cameras in the bathroom and dressing areas could require the prison to increase staffing or reassign a large percentage of its staff, or both, and there is no readily identifiable alternative that would impose only *de minimis* expenses in terms of inmate security, staffing costs, or equal employment opportunities. *Id.* We have subsequently affirmed this position. See, e.g., *Mitchell v. Quarterman*, 515 Fed. Appx. 244, 247 (5th Cir. 2012) (unpublished)[.]

*Id.* at 380-81.[17]

Here, the lack of privacy manifestly originates from measures designed to enhance the legitimate penological interests of safety and security.  Plaintiff's allegations do not amount to a plausible constitutional violation under either the Fourth or Fourteenth Amendments.[18]

Accordingly, the Court should dismiss this claim.

---

[17] Of note, the Fifth Circuit affirmed dismissal even though the defendants did not offer a legitimate governmental or penological interest.  *Id.;* see also *Ordaz*, 5 F.3d at 529; *Bryant v. Strong*, 2013 WL 504893, at *3 (S.D. Tex. Feb. 7, 2013) ("Prison policies and practices allowing male inmates to be strip searched in the presence of female officers are widely-utilized throughout state and federal prison systems, and the courts have generally recognized their constitutionality under the penumbra of 'legitimate penological interests.'"); *Patin v. LeBlanc*, 2012 WL 3109402, at *20 (E.D. La. May 18, 2012), report and recommendation adopted, 2012 WL 3109398 (E.D. La. July 31, 2012).

[18] See *Petty v. Johnson*, 193 F.3d 518 (5th Cir. 1999) ("The presence of female prison guards for security reasons on those occasions when male prisoners are naked is not a constitutional violation."); *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) (holding that the use of female

**6. Equal Protection**

With respect to his lack of privacy, Plaintiff alleges: "If men were watching female prisoners in the privacy of the shower and toilets it would be an outrage.  Men should have the same protection."  [doc. # 17, p. 10].

In *Garrett*, 560 Fed. App'x at 381, a prisoner claimed that placing surveillance cameras in the restroom, shower, and dressing quarters amounted to gender-based discrimination.  The Fifth Circuit ruled:

> We held in *Yates v. Stalder,* 217 F.3d 332, 334 (5th Cir. 2000), and reiterated in *Oliver,* 276 F.3d at 746, that, to prove an equal protection violation on the basis of sex, male prisoners must demonstrate that male and female prisoners are similarly situated. Courts should consider "the number of inmates housed in each facility, their average length of stay, their security levels, and the incidence of violence and victimhood" to determine whether the prisons identified—and hence their surveillance policies—are comparable. *Id.* at 335. Garrett failed to identify a particular women's facility or reference anything else to support an allegation that no women's facilities had video surveillance cameras; neither did he allege that male and female prisoners were similarly situated. Vague and conclusory allegations that a prisoner's equal protection rights have been violated are insufficient to raise an equal protection claim. *Pedraza v. Meyer,* 919 F.2d 317, 318 n. 1 (5th Cir. 1990).

*Id.*

---

guards in guard towers giving a full view of male inmates taking showers is not unconstitutional); *Ordaz*, 5 F.3d at 529 (dismissing, under the Fourth Amendment, a claim that female officers viewed the plaintiff masturbating and reasoning: "a prisoner has no reasonable expectation of privacy in the 'curtilage' surrounding his prison cell. Consequently, the female guards' observations from this vantage point could not have constituted a search within the meaning of the Fourth Amendment."); *Guy v. Tanner*, 2012 WL 1565425, at *3 (E.D. La. Mar. 20, 2012), report and recommendation adopted, 2012 WL 1565421 (E.D. La. May 2, 2012); *Warren v. Gusman*, 2017 WL 1373875, at *7 (E.D. La. Mar. 10, 2017), report and recommendation adopted, 2017 WL 1355709 (E.D. La. Apr. 13, 2017); *Clayborne v. Beasley*, 2009 WL 929305, at *2 (S.D. Miss. Apr. 2, 2009); *Hmeid v. Nelson Coleman Corr. Ctr.*, 2018 WL 4922381, at *14 (E.D. La. Aug. 15, 2018), report and recommendation adopted, 2018 WL 4909898 (E.D. La. Oct. 10, 2018) (dismissing a claim that a plaintiff's "privacy rights were violated because there was no partition wall between the shower and toilet areas of the Coleman dorm, and that the guards constantly watched the inmates in those areas from an observation pod.").

Here, like in *Garrett*, Plaintiff does not identify a particular women's facility or allege that male and female prisoners are similarly situated. The Court should dismiss this claim.

**7. Medical Care**

Plaintiff claims that he has a "chronic back problem" and that "medical refuses to issue pain meds, only certain meds. [sic]." [doc. # 1, p. 3]. In a later pleading, he names a physician, John Doe ("Dr. John Doe"), as the responsible defendant, claiming that Dr. John Doe informed him that LPDC does not provide pain medication. [doc. # 17, pp. 8-9]. Plaintiff allegedly lacked adequate pain medication for three months. *Id.* at 9.

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement

23

with his medical treatment, absent exceptional circumstances.  Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff does not allege that Dr. John Doe was deliberately indifferent.  While Dr. John Doe informed Plaintiff, on approximately July 9, 2019, that the facility did not provide pain medication, Plaintiff does not allege that he requested medication from Dr. Doe.  Specifically, he does not explain what, if anything, he told or asked Dr. Doe before Doe informed him that the facility did not provide pain medication; in other words, he does not allege that Dr. Doe knew he was exposed to a substantial risk of serious harm.[19]  [doc. # 17, pp. 8-9].  Rather, Plaintiff alleges that, three months later, he requested pain medication from a nurse because his pain was unbearable.  *Id.* at 9.

Further, Plaintiff attaches a response—which he does not refute—to his October 9, 2019 request for care, in which a nurse told him that records demonstrated that he received Tylenol. [doc. # 17-1, p. 34].  The nurse noted that Plaintiff's record "show[ed]" Gabapentin, but the

---

[19] Plaintiff does not allege that Dr. John Doe implemented a custom, policy, practice, or procedure of denying any and all pain medication to prisoners at LPDC who experienced pain and requested medication.

nurse told Plaintiff, "we do not give that here."  *Id.*  The nurse concluded: "Dr. will be here

Friday and can review and give short term med for back pain. [sic]."[20]  *Id.*

To the extent Plaintiff claims that Dr. John Doe provided Tylenol yet refused to

provide—or refused to approve the provision of—Plaintiff's desired pain medications, he fails to

state a plausible claim.  Substituting one pain-relieving medication for another pain-relieving

medication does not reflect deliberate indifference to a substantial risk of serious harm.  See

*Mathis v. Alexander*, 49 F.3d 728 (5th Cir. 1995) (ruling, where the plaintiff claimed that he

received only Tylenol for pain, that the allegations did not amount to deliberate indifference to a

prisoner's serious medical needs or to an excessive risk to inmate health).[21]  Defendant did not

refuse treatment, ignore Plaintiff's complaints, intentionally treat him incorrectly, or engage in

conduct that clearly evinced a wanton disregard for Plaintiff's serious medical needs.   Thus, the

Court should dismiss this claim.

## 8. Grievance Process

In his third amended pleading, Plaintiff lists several complaints concerning grievances at

LPDC:

---

[20]  The nurse did not specify which "Friday," the physician would arrive.  As the nurse responded on October 9, 2019, a Wednesday, presumably she expected the physician to arrive approximately two days later.

[21]  See also *Sanford v. Tarrant Cty. Sheriff's Dep't*, 628 F. App'x 301, 302 (5th Cir. 2016) ("Sanford's complaint that he received only ibuprofen for pain amounts to a mere disagreement with medical treatment, which does not constitute a constitutional violation."); *Blaylock v. Revell*, 67 F. App'x 243 (5th Cir. 2003) (finding that an allegation that one physician "refused to continue [the plaintiff] on the pain medication that had been prescribed by [another physician was] a disagreement over the type of medical care received, and, therefore, it [did] not rise to the level of a constitutional violation."); *Shockley v. Fox*, 444 Fed. App'x. 36, 37–38 (5th Cir. 2011) (upholding dismissal of a claim that prison officials did not fill a narcotic prescription but instead offered other medications).

     ° "There is no grievance box to keep complaints confidential; grievances are picked up from the dorms (cell blocks) with the outgoing mail, and any officer can have access to your grievance."

     ° "Officers or any staff can answer your grievance even when it's against them."

     ° "There is no central grievance officer . . . ."

     ° Secretary James LeBlanc "should be listed as Step 2 in the grievance process";

     ° Secretary James LeBlanc should maintain an "in-house mail box that does not require a paid postage at the inmate's expense," or he should maintain a liaison or representative at LPDC.

*Id.* at 3-5. He claims that, because the grievance procedure is inadequate, he was unable to exhaust his administrative remedies. *Id.* at 4.

     A plaintiff, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. 2004) (holding that "claims that the defendants violated . . . constitutional rights by failing to investigate . . . grievances fall short of establishing a federal constitutional claim."); *Geiger*, 404 F.3d at 371 (holding that an inmate does not have a "federally protected liberty interest in having [] grievances resolved to his satisfaction."); see also *Robinson v. Luker*, 199 F.3d 437 (5th Cir. 1999) (finding, where the prisoner complained that grievances were not confidential, that the prisoner's claim was frivolous because the prisoner did not allege that violation of confidentiality caused any atypical and significant hardship in relation to the ordinary incidents of prison life). Thus, the Court should dismiss these claims.

**9. Retaliation**

Plaintiff claims that defendants transferred him to OCC in retaliation for requesting to use law library books.  [doc. # 18, p. 2].

To prevail on a retaliation claim, a plaintiff must prove: (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred.  *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998).  Courts must "carefully scrutinize" retaliation claims to "assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).[22]

A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred.  *Woods*, 60 F.3d at  1161.  "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation."  *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).  With respect to the third prong above, "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."  *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

Here, Plaintiff does not plausibly allege a retaliatory adverse act.  "[A] claim that an inmate was transferred to a more dangerous prison in retaliation for an exercise of a constitutional right will support a Section 1983 claim."  *Ward v. Fisher*, 616 F. App'x 680, 684

---

[22] "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  *Id.* (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

(5th Cir. 2015). Plaintiff does not allege that OCC was more dangerous than, or inferior to, LPDC. To the contrary, Plaintiff even suggests that the Sheriff and Warden should have transferred him to OCC due to alleged overcrowding at LPDC. [doc. # 17, p. 7]. The Court should dismiss this claim.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Thomas Wayne Waller's claim that he was incarcerated beyond his release date be **DISMISSED** as duplicative, frivolous, and malicious.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for preliminary injunction, [doc. # 1], be **DENIED AS  MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 10th day of January, 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE